UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELVIN LYNN HUBER,

No. 07-14588

　　　　　　Plaintiff,

District Judge Lawrence P. Zatkoff

v.

Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

　　　　　　Defendant.
_____/

## REPORT AND RECOMMENDATION

　　　　Plaintiff Melvin Lynn Huber brings this action under 42 U.S.C. §405(g), challenging

a final decision of Defendant Commissioner denying his application for Disability Insurance

Benefits under the Social Security Act.　Parties have filed cross motions for summary

judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C.

§636(b)(1)(B).　For the reasons set forth below,　I recommend that Defendant's Motion for

Summary Judgment be DENIED and Plaintiff's Motion for Summary Judgment GRANTED,

remanding this case for further administrative proceedings pursuant to sentence four of

§ 405(g), with instructions to consider new material presented to the Appeals Council and

to this Court.

## I.　　PROCEDURAL HISTORY

　　　　Plaintiff applied for Disability Insurance Benefits ("DIB") on March 8, 2004, alleging

a disability onset date of November 10, 2003 (Tr. 54).　Upon denial of the claim, Plaintiff

requested an administrative hearing, held December 7, 2006 in Mt. Pleasant, Michigan (Tr.

331).　Administrative Law Judge ("ALJ") Thomas English presided (Tr. 331).　Plaintiff,

represented by attorney J. B. Bieski, testified, as did Vocational Expert ("VE") Sharon Princer (Tr. 334-348, 348-353). On April 27, 2007, ALJ English issued a non-disability finding, determining that although Plaintiff was unable to return to his past relevant work, he could perform a significant range of exertionally light jobs (Tr. 23). On September 18, 2007, the Appeals Council denied review (Tr. 6-8). Plaintiff filed suit in the United States District Court for the Western District of Michigan on October 18, 2007. *Docket #1* at pg. 4 of 10. The case was transferred to this Court on October 23, 2007. *Id*. at pg. 2 of 10.

## II.  BACKGROUND FACTS

Plaintiff, 50 at the time of the administrative decision, graduated from high school and worked previously as a general laborer, body man, and plasterer (Tr. 79, 351-352). His application for benefits alleges disability as a result of degenerative arthritis (Tr. 82).

### A.  Plaintiff's Testimony

Plaintiff, 6' 4" and 300 pounds, testified that he lived with his girlfriend in a one-story house (Tr. 334-335). Plaintiff, right-handed, reported that on November 10, 2003, his back "just popped" while he was preparing to go to work (Tr. 335-336). He alleged that he was currently unable to either stand or sit for any length of time due to lower back pain, estimating that on a scale of one to ten, he typically experienced level six to eight pain (Tr. 336-337). He added that at best, he experienced level four to five pain (Tr. 338).

Plaintiff testified that a consultive surgeon advised against back surgery (Tr. 338-339). He reported taking Lortab with limited results, adding that he had ceased taking Vicodin approximately one and a half months before the hearing (Tr. 339). Plaintiff indicated that Lortab lessened, but did not relieve his discomfort (Tr. 340).

Plaintiff estimated that he drank two to three beers in the evening, acknowledging that previously, he consumed up to 12 a day (Tr. 340). He denied illicit drug use (Tr. 341).

Plaintiff reported smoking a pack of cigarettes each day (Tr. 340). He testified that he was able to shop, wash dishes, vacuum, and perform laundry and yard chores, but required breaks when vacuuming and mowing the lawn (Tr. 341-342). He reported that he continued to read, watch television, woodwork, drive, and socialize with family and friends (Tr. 342). Plaintiff testified that his daily activities were interrupted multiple times each day by his need to sit down or recline (Tr. 343).

In response to questioning by his attorney, Plaintiff testified that his back pain radiated into his right leg (Tr. 346). He also reported that he had been diagnosed with sleep apnea, but was unable to afford a C-PAP machine (Tr. 347).[1] He indicated that he had received one steroid injection, but was advised that injections would exacerbate, rather than decrease his symptoms of degenerative arthritis (Tr. 347-348).

## B. Medical Records

### 1. Treating Sources

In February, 2004, Plaintiff was prescribed Darvocet after seeking urgent care for right hip pain (Tr. 134). The same month, Cesar R. Udani, M.D. noted that Plaintiff was currently unable to lift more than 25 pounds (Tr. 150). The following month, Plaintiff underwent physical therapy for continued back pain (Tr. 135-141). Physical therapist Jacqueline Wiley noted that chiropractic sessions following Plaintiff's November, 2003 onset did not improve his condition (Tr. 138). Plaintiff expressed a desire to return to work (Tr. 139).

At the end of March, 2004, Plaintiff reported to Ms. Wiley that he felt well enough

---

[1] "CPAP" refers to "continuous positive airway pressure." A CPAP machine delivers a stream of compressed air, via a face mask, nose mask or nasal pillow, during sleep, keeping the airway open and permitting unobstructed breathing, thus reducing or preventing the effects of sleep apnea. *See* www.webmd.com/sleep-disorders/sleep-apnea.

the previous day to walk two miles to the grocery store (Tr. 135). An MRI of the lumbar spine performed in April, 2004 showed moderate lumbar spondylolysis with "a small right paracentral L4-5 disc herniation . . . contributing to a mild central spinal stenosis and right lateral recess encroachment as well as mild foraminal narrowing" (Tr. 142).

In May, 2004, Dr. Udani completed an evaluation of Plaintiff's condition on behalf of his application for Family Independence Agency benefits, finding that Plaintiff was currently unable to lift more than five pounds, but that he retained the ability to perform unlimited pushing, pulling, reaching and manipulative functions (Tr. 157). The same month, physiatrist Alexander Iwanow, M.D., diagnosing Plaintiff with "degenerative disease at multiple levels of the lumbosacral spine," and "possible sacroiliac joint irritation," opined that based on April, 2004 MRI results, Plaintiff was currently disabled (Tr. 159). Dr. Iwanow, also noting that Plaintiff admitted to drinking up to 12 beers per day, stated that he wanted "to see if we are dealing with neuropathy, radiculopathy or maybe both because of the alcohol intake" (Tr. 159).

In June, 2004, Dr. Iwanow, noting that Plaintiff was unable to tolerate an electromyogram the previous month, made the following finding:

> "After reviewing his situation; realistically, I believe the patient has a fair amount of spinal stenosis and degenerative disease of the lumbar spine to the point that he is totally and permanently not employable. Generally, from past experience with similar people, attempts at returning them . . . to work usually end[] in disaster"

(Tr. 200). The same month, Plaintiff told Dr. Udani that "his situation ha[d] been deteriorating . . . to the point that he is now depending on his friend to do some of his household work and to drive him around" (Tr. 254). In August, 2004, Subhash C. Gupta, M.D. opined that Plaintiff's "prognosis of improvement with nerve block therapy [was] low" (Tr. 236). Treatment notes from September, 2004 indicate that Plaintiff reported minimal

relief from epidural steroid injections and a nerve block administered the previous month (Tr. 170). In December, 2004, Dr. Iwanow prescribed Neurontin, discontinuing prescriptions for Lodine and Ultram (Tr. 199).

In January, 2005, Ernest Ofori-Darko, M.D. advised Plaintiff to lose weight, reduce his alcohol intake and use of herbal supplements, and begin an exercise program (Tr. 189). In March, 2005, Dr. Ofori-Darko noted that symptoms of reflux were well controlled (Tr. 187). In May, 2005, Dr. Iwanow observed that Plaintiff was unable to toe stand or walk, or heel walk or stand (Tr. 195).

In October, 2005, an MRI showed a "small central L4-5 disc herniation and central stenosis" (Tr. 234). The following month, Brian R. Copeland, M.D. conducted a neurosurgical consultation, observing that Plaintiff moved with a "very slow, antalgic gait . . . . with the aid of a cane" (Tr. 216). Deeming MRI results of a central disk herniation as "relatively modest," Dr. Copeland advised against surgery, noting a "failure rate as high as 50 to 75%" (Tr. 216). The same month, Amarish S. Potnis, M.D. noted a limited range of back motion, but observed that Plaintiff's gait was normal (Tr. 224). In December, 2005, Plaintiff was diagnosed with sleep apnea after complaining of "severe daytime fatigue," meeting "the criteria of being placed on C[-]PAP" (Tr. 238, 241, 286).

In February, 2006, Plaintiff told Dr. Udani that he was unable to afford a C-PAP machine but was trying to piece together used components (Tr. 244, 267). The same month, Plaintiff described his typical pain level as a six or seven on a scale of one to ten (Tr. 223). Dr. Potnis observed that with the aid of a cane, Plaintiff's gait was stable (Tr. 223). In May, 2006, Dr. Potnis prescribed a Medrol dosepak for pain management (Tr. 221).

### 2. A Non-Examining Source

In June, 2004, a Physical Residual Functional Capacity Assessment based on Plaintiff's treating records found that Plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently; stand, walk, or sit for up to six hours in an eight-hour workday; and had an unlimited ability to push or pull (Tr. 163). The Assessment limited Plaintiff to *frequent* (as opposed to *constant*) climbing, balancing, kneeling, crouching and crawling (Tr. 164). Plaintiff was limited to *occasional* stooping (Tr. 164). The Assessment found the absence of manipulative, visual, communicative, or environment limitations (Tr. 165-166). Noting objective medical testing and Plaintiff's wide variety of daily activities, the Assessment concluded that his allegations of disability were only partially credible (Tr. 167).

### 3. Material Submitted After the April 27, 2007 Administrative Decision

Plaintiff submitted an additional 19 pages of medical records from Dr. Potnis with the request for Appeals Council review (Tr. 312-330). The records, dated June, 2006 through May, 2007, indicate that Dr. Potnis prescribed MS (morphine sulfate) Contin from February, 2007 forward (Tr. 312, 314).

### C. VE Testimony

VE Sharon Princer classified Plaintiff's former work as a general laborer as unskilled at the medium level of exertion; body man as semiskilled (as performed),[2] light (as performed); and plasterer, semiskilled (as performed), heavy (as performed)[3] (Tr. 352). The

---

[2]The VE noted that Plaintiff performed his former jobs at exertional and skill levels differing from the *Dictionary of Occupational Titles* ("DOT") descriptions of those positions (Tr. 352).

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50

ALJ then posed the following hypothetical question:

> "[A]ssume a hypothetical person who is able to perform unskilled work at a light exertional level with 20 pounds, lift or carry up to 20 pounds occasionally, 10 pounds frequently, requiring a sit stand at will option with no repetitive bending, twisting, or turning, and no climbing, crawling, squatting, or kneeling, and no use of foot controls. Would such a person be capable of performing any of the Claimant's past work as typically performed in the economy, or as Claimant performed it?"

(Tr. 419-420). The VE found that based on the hypothetical limitations, Plaintiff was unable to return to any of his past relevant work but could perform the unskilled, light work of a general office clerk (10,000 positions in the regional economy); cashier (16,000); and ticket seller (1,800)(Tr. 352). The VE testified that her findings were consistent with the information provided by the DOT with the exception of the "sit/stand" option, which was based on her own occupational findings (Tr. 353). She testified that she also relied on the labor statistics found in the *Department of Labor Occupational Outlook Handbook* (Tr. 353). She concluded that if Plaintiff's testimony that he needed to lie down every two hours was credited, he would be precluded from all full-time work (Tr. 353).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ English found that although Plaintiff experienced the severe impairment of "degenerative disease of the lumbosacral spine with disc herniation at L4-5," it did not meet or equal any impairment listed in Appendix 1, Subpart P, Regulations No.4 (Tr. 20, 23). The ALJ, acknowledging Plaintiff's diagnosis of sleep apnea, noted that Plaintiff "did not present it as a significant problem," finding further that if Plaintiff "has any impairment in this area, it causes no more than minimal limitations

---

pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

in his ability to perform basic work-related activities" (Tr. 20).

The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC")

"to perform light work with an at-will sit–stand option; with no kneeling, climbing, squatting, or crawling; with no repetitive bending, twisting, or turning; and with no use of foot controls." (Tr. 21, 23).

Adopting the VE's numbers, the ALJ found that although Plaintiff could not perform his past relevant work, he was capable of the unskilled, light work of a general office clerk, cashier, and ticket seller (Tr. 21, 24).

The ALJ supported his determination by finding that Plaintiff's testimony was "not totally credible," noting that despite his allegations of "a total inability to work," Plaintiff continued to care for his personal needs, performing a variety of household, yard, and shopping chores (Tr. 22). The ALJ also cited March, 2004 treating notes showing that Plaintiff reported walking two miles (Tr. 22 *citing* 135).

### III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into

account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.    ANALYSIS

### A.    Issues Based on Administrative Record

Plaintiff contends that since November, 2003, he is "unable to walk any distance [or] sit without pain." *Docket #11*.  He also alleges that the medication side effect of drowsiness obliges him to "sleep most of the day away." *Id.*

### 1. The ALJ's Treating Physician Analysis

ALJ English rejected Dr. Iwanow's May and June, 2004 findings that Plaintiff was disabled, as well as Dr. Udani's April, 2004 opinion that Plaintiff was unable to lift more than five pounds, concluding that the treating physicians' statements were "not reliable, credible, or controlling in anyway (sic)  They are inconsistent with the overall evidence of record . . . including the reports of findings of Dr. Udani and Dr. Iwanow, themselves" (Tr. 22).  The ALJ also noted that Plaintiff's testimony that he was unable to stand for extended periods stood at odds with a March, 2004 admission that he had walked two miles (Tr. 22 *citing* Tr. 135).

The uncontradicted opinions of treating physicians are entitled to complete deference. *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (FN 7)(6th Cir. 1991). In the presence of contradictory evidence that would allow the ALJ to accord less than controlling weight, he must nonetheless consider the following factors: "the length of the . . . relationship and the frequency of examination, the nature and extent of the treatment, . . . [the] supportability of the opinion, consistency . . . with the record as a whole, and the specialization of the treating source." *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004)(*citing* 20 C.F.R. § 404.1527(d)(2)).

The ALJ's treating physician's analysis is procedurally adequate.  Although the paragraph devoted to rejecting the findings of Drs. Udani and Iwanow omits specific mention of a number of the *Wilson* factors, such as the "frequency of examination," and "nature and extent of treatment," these factors are addressed in the ALJ's earlier review of Plaintiff's medical history, including the commencement dates of treatment and Dr. Iwanow's specialization of "physical medicine" (Tr. 19-20).

The analysis is likewise substantively adequate.  Although Dr. Iwanow's June, 2004

finding that Plaintiff was "totally and permanently not employable," (*supra* at 5 *citing* Tr. 200) appears compelling (given the treating physician's specialization and experience in similar cases), substantial evidence also supports the opposite conclusion.  The ALJ cited imaging studies showing that the disc herniation was small, with only moderate stenosis (Tr. 21).  The ALJ also noted that Plaintiff admitted a wide variety of activities inconsistent with disability, including shopping reading, woodworking, and household and lawn chores  (Tr. 22).  Because the ALJ supported his treating physician analysis with substantial evidence, a remand on this basis is not appropriate.

### 2.  The ALJ's Step Two Omission of Sleep Apnea as a Severe Impairment

At Step Two of the administrative analysis, the ALJ found that Plaintiff experienced the severe impairment of "degenerative disease of the lumbosacral spine with disc herniation at L4-5" (Tr. 20).  The ALJ acknowledged "some evidence in the record indicating that the claimant has obstructive sleep apnea syndrome," but found that the condition was non-severe (Tr. 20).  The ALJ commented that Plaintiff "admitted at the hearing that he is not undergoing any treatment for this, and he did not present it as a significant problem," concluding that the condition "cause[d] no more than minimal limitations in [Plaintiff's] ability to perform basic work-related activities" (Tr. 20).

20 CFR § 416.921(a) defines a non-severe impairment as one that does not "significantly limit [the]  physical or mental ability to do basic work activities."   The same regulation defines "basic work activities" as "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work  setting." *Id.*  The court in *Farris v. Secretary of HHS*, 773 F.2d 85, 89 (6th Cir. 1985), found that  "the second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing

the Secretary to screen out totally groundless claims." An impairment can be considered "not severe . . . only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Farris,* 773 F.2d at 90, quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984).

The Step Two finding that Plaintiff's sleep apnea was non-severe reflects an erroneous reading of the record. Plaintiff's testimony contradicts the ALJ's inference that Plaintiff did not seek treatment for sleep apnea because it was not "a significant problem" (Tr. 20). In fact, Plaintiff testified that he did not use a C-PAP machine (as advised by his physicians) not because he had no problem, but *because he could not afford one* (Tr. 347). Plaintiff's testimony is borne out by February, 2006 treating records indicating that although unable to afford a new machine, he was trying piece together used components (Tr. 244, 267).

Additional record evidence stands at odds with the ALJ's conclusion that Plaintiff sleep apnea did not create work-related limitations. In October, 2005, Plaintiff reported "severe daytime fatigue" along with nighttime sleep disturbances (Tr. 238). His allegations of sleep apnea are also supported by objective medical testing. *Moore v. Secretary of HHS* 1994 WL 773513, 4 (E.D. Mich.1994); 42 USC § 423(d)(5)(A). A January, 2006 polysomnography confirmed that Plaintiff's sleep apnea was severe enough to warrant the use of a C-PAP machine (Tr. 241). Moreover, the ALJ's conclusion that sleep apnea did not create work-related limitations is unsupported by *any* record evidence.

Admittedly, the omission of an impairment at Step Two where substantial evidence supports the presence of a work-related limitations does not in and of itself require remand. *Street v. Barnhart* 340 F.Supp.2d 1289 (2004), 1293 -1294 (M.D.Ala.,2004). *See also Moran v. Commissioner of Social Security* 2003 WL 22002432, 2 (E.D.Mich.,2003); *Leeper*

*v. Sullivan* 1990 WL 77874, 2 (N.D.Ill.1990)).   However, here, the ALJ's failure to consider the effects of daytime fatigue for the remainder of the five-step administrative analysis taints his ultimate conclusion that Plaintiff was capable of a significant range of light work.   The hypothetical question, listing only lifting, walking, standing, sitting, push/pulling and postural deficiencies, did not address Plaintiff's well-documented limitations as a result of daytime fatigue (Tr. 352).   "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987)(internal citations omitted).

Because the ALJ erred in failing to properly consider the vocationally limiting effects of sleep apnea and daytime fatigue, this case must be remanded for further analysis and reconsideration, pursuant to sentence four of § 405(g).

### B.    Evidence Submitted to the Appeals Council

Along with his request for Appeals Council Review, Plaintiff submitted 19 pages of medical records by Dr. Potnis (Tr. 312-330). The records span Plaintiff's treatment history from June, 2006 to May, 2007 and were not reviewed by ALJ.

Plaintiff's submission of records following the ALJ's April 27, 2007 decision is construed as a request for a "sentence six" remand.[4]  42 U.S.C. § 405(g). A sentence six remand is appropriate upon a showing that (1) there is new evidence that is material, and (2)

---

[4] The Plaintiff's *pro se* pleadings and arguments will not be held to the standard of a practicing attorney, but will be given a liberal construction.  *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (*pro se* pleadings are held to "an especially liberal standard"); Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

there is good cause for not having presented this evidence at the earlier administrative proceeding. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).Accordingly, this court "may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g)." *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993). Where the Appeals Council denies a claimant's a request for a review of his application based on new material, "the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision" under sentence four. *Id.* at 695-96.

## 1. Materiality

A review of the latter-submitted records indicates that they are material to Plaintiff's current application for benefits. In order for Plaintiff to satisfy his burden of proof as to materiality, he must demonstrate that there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 711 (6th Cir. 1988).

Treating records show that Dr. Potnis prescribed MS Contin, 15 mg. on February 20, 2007, increasing Plaintiff's dosage to 30 mg. on March 21 and April 18, 2007 (Tr. 326-328). Evidence showing that Plaintiff used MS Contin (a pure opioid agonist analgesic) at the advice of his treating physician stands at directly at odds with a portion of the ALJ's non-disability findings:

> "[T]he undersigned notes that despite the claimant' complaint of pain, he has not undergone any surgical procedures on his back, nor has he undergone any other real aggressive methods of pain or other symptom relief treatment. *He has taken some medications but these do not include any real strong prescription analgesics*, and he complained of no significant side-effects other than some drowsiness from the medications that he does take. Certainly, his pain must not be as severe as he alleges" (Tr. 22) (emphasis added).

The newer records not only contradict the ALJ's "no prescription analgesics" findings, but cast doubt on his observation that Plaintiff did not experience "significant side-effects other than some drowsiness," given that MS Contin's most common side effects include dizziness and sedation. *www.rxlist.com*. Moreover, the newer records underscore the ALJ's failure to address Plaintiff's limitations as a result of sleep apnea. Because the present record does not account for limitations of daytime fatigue as a result of sleep apnea or the sedative effects of opiate use, the case should be remanded to consideration of these conditions based on the new medical records.

## 2. Good Cause

The chronology of the administrative hearing, decision, and Appeals Council submission demonstrates good cause for not presenting the new records earlier. The newer records, created subsequent to the December 7, 2006 hearing, were obviously not available at the time of the hearing. Likewise, Plaintiff could not have testified to MS Contin use three months before it was prescribed by Dr. Potnis. Plaintiff's failure to procure the newer records (created between February 20, 2007 and April 18, 2007) before the April 27th decision can be ascribed both to the fact that he was proceeding *pro se* subsequent to the hearing and to his well-documented financial hardships.[5]

Accordingly, in addition to a sentence four remand, Plaintiff would be entitled to a sentence six remand to allow the ALJ to consider the impact of these new, material records.

## C.    Remedy

---

[5]Plaintiff was represented at the hearing. However, counsel's contingent fee contract guaranteed representation only "up to and inclusive of the Administrative Law Judge level of appeal" (Tr. 39).

As discussed above, the ALJ's decision is flawed because he failed to properly consider the vocational limitations occasioned by the Plaintiff's sleep apnea and daytime fatigue. As a result, Plaintiff is entitled to a sentence four remand for further administrative review. In addition, the Plaintiff has submitted new and material medical records that would entitle him to a sentence six remand. It is therefore necessary to address the procedural question of how this Court can fashion an appropriate remedy when a plaintiff establishes a dual basis for a remand under *both* sentence four and sentence six.

Judicial review of final decisions by the Commissioner is governed by 42 U.S.C. § 405(g), which provides that a case may be remanded for only two reasons. A "sentence four" remand derives, not surprisingly, from the fourth sentence of § 405(g), which states:

> "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing."

By the terms of the statute, a sentence four remand is a final judgment which terminates the district court's jurisdiction. *Shalala v. Schaefer*, 509 U.S. 292, 299, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993); *Melkonyan v. Sullivan*, 501 U.S. 89, 101-102, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

On the other hand, the sixth sentence of § 405(g) provides for a remand

> "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

A sentence six remand does not constitute a final judgment. Rather, the district court retains jurisdiction, and enters final judgment only "after postremand agency proceedings have been completed and their results filed with the court." *Shaefer*, 509 U.S. at 297; *see*

*also Melkonyan*, 501 U.S. at 98.

There are occasions–as in the present case–where a claimant presents grounds for both a sentence four and a sentence six remand. Addressing this situation in *Jackson v. Chater*, 99 F.3d 1086 (11ᵗʰ Cir. 1996), the Eleventh Circuit sanctioned a "dual basis" remand, rejecting the Commissioner's argument that the statute forbade simultaneously ordering both types of remand:

> "But nothing in the statute indicates that a court cannot remand the same case for both statutory reasons at one and the same time. Not only does the statute not forbid a dual basis remand, the Commissioner has not put forward a good policy reason for doing so, either. Policy justifications actually point the other way. Suppose the ALJ clearly commits an error in the course of considering the evidence presented, and just as clearly there is also some new evidence that the claimant is entitled to have presented and considered, apart from any error by the ALJ. Why is the district court required to correct only half of the problem? Why should the district court not remand for both purposes, in order to get everything right in one proceeding, instead of having two remand proceedings?

Recognizing that a sentence four remand terminates the district court's jurisdiction but a sentence six remand does not, *Jackson* described the following procedure in a dual basis remand:

> "[I]f both sentence-four and sentence-six grounds for remand exist in a disability case, the case may be remanded on both grounds. District court jurisdiction over the case continues after the entry of the remand judgment as a result of the sentence-six prong of the remand. If a claimant achieves a remand on both sentence-four and sentence-six grounds, and thereafter succeeds on remand in part due to the sentence-six ground, the claimant may return to district court to request entry of judgment after remand proceedings have been completed." 99 F.3d at 1098.

*See also Bradley v. Barnhart*, 463 F.Supp.2d 577, 583 (S.D. W.Va. 2006) (citing *Jackson*).

In *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171 (6th Cir. 1994), the Sixth Circuit took a somewhat different approach. The plaintiff in *Faucher* requested an

award of benefits or in the alternative, a remand for additional proceedings under both sentence four and sentence six. The district court found that the plaintiff had not met the "good cause" requirement for a sentence six remand, but awarded benefits. On appeal, the Sixth Circuit reversed the award of benefits, but remanded for proceedings under sentence four. However, *Faucher* held that when an ALJ commits an error that results in a sentence four remand, the ALJ can consider additional evidence, even though the plaintiff has not otherwise met the requirements for a sentence six remand. *Faucher* rejected the contention that only a sentence six remand would permit the taking of additional evidence:

> "To conclude, remands under both sentence four and sentence six of § 405(g) can involve the taking of additional evidence. Under sentence six, a district court, before making a final judgment, may order the Secretary to consider additional evidence because a party presents material evidence to the court that was not previously available.

> "Under sentence four, the court makes a final judgment, affirming, reversing, or modifying the Secretary's decision and *may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings*, a defect which caused the Secretary's misapplication of the regulations in the first place" (emphasis added). 17 F.3d at 175.

I recognize that the present case differs from *Faucher* in that here, the Plaintiff has satisfied the requirements for both a sentence six and a sentence four remand. In addition, nothing in *Faucher* appears to preclude a dual basis remand in an appropriate case. *See Harthun v. Commissioner of Social Security*, 2008 WL 2831808, *8 (WD Mich. 2008)(unpublished) (recognizing possibility of dual basis remands, although finding that plaintiff had not satisfied the requirements of sentence six). Nevertheless, I find that in this case, *Faucher* sets forth the better remedy: remanding under sentence four, with a directive to the Secretary to consider the additional evidence that Plaintiff has submitted.

The new sentence six material, which includes medication records, is almost

inseparably connected to the basis of the sentence four remand, that is, the ALJ's failure to properly consider the effects of sleep apnea and daytime fatigue. A dual basis remand could be jurisdictionally confusing, especially for a *pro se* litigant, who would have to determine whether relief at the administrative level was based on sentence four grounds, sentence six grounds, or some combination of the two. In addition, although *Jackson* found the *Faucher* approach potentially "problematic," it did recognize that "*Faucher* might be seen as a way out of the jurisdictional problem created by dual basis remands....The *Faucher* procedure seems to allow the same result as the dual basis remand in this case: the Commissioner is required to correct the substantive error and to hear new evidence." *Jackson*, 99 F.3d at 1093, fn.3. *Faucher* therefore satisfies *Jackson's* policy concern that on remand, the ALJ "get[s] everything right in one proceeding, instead of having two remand proceedings." *Jackson* at 1095.

Finally, why follow an Eleventh Circuit case–however well-reasoned it might be–when the Sixth Circuit has provided a clean, simple remedy that gives the Plaintiff a full and fair opportunity to have a single hearing at which all material evidence will be considered?

## VI.    CONCLUSION

I recommend that Plaintiff's Motion for Summary Judgment be GRANTED and that Defendant's Motion for Summary Judgment be DENIED. I further recommend that the case be remanded under sentence four of 42 U.S.C. § 405(g), with an order that on remand, the ALJ consider the newer material that Plaintiff submitted to the Appeals Council and to this Court.

Any objections to this Report and Recommendation must be filed within ten (10)

days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: November 19, 2008

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 19, 2008.

s/Susan Jefferson
Case Manager